**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MARY H. GODDARD,

 Plaintiff,         CASE NO. 06-CV-10336

v.             DISTRICT JUDGE THOMAS LUDINGTON
              MAGISTRATE JUDGE CHARLES BINDER
R. JAMES NICHOLSON,
SECRETARY OF
VETERAN AFFAIRS,

 Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Dkt. 42)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED**.

## II.   REPORT

### A.   Introduction

By order of United States District Judge David Lawson, this *pro se* employment discrimination case was referred to the undersigned Magistrate Judge for pretrial case management (Dkt. 4.) The case was reassigned to United States District Judge Thomas Ludington on September 13, 2006. (Dkt. 20.) On December 29, 2006, the Defendant filed this motion for summary judgment. (Dkt. 42.) Plaintiff Goddard responded opposing the motion (Dkt. 43) and

Defendant filed a reply. (Dkt. 46.)[1] Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for Report and Recommendation on the documents submitted.

### B. Facts and Arguments of the Parties

Plaintiff's *pro se* complaint alleges that she was discriminated against by Defendant, her employer, based on her gender. Plaintiff's claim was denied by the Equal Employment Opportunity Commission ("EEOC") in a final Order dated October 26, 2005. (Compl., Dkt. 1, attachment).

The majority of the facts are not in dispute. Plaintiff was employed by the Aleda E. Lutz Veteran's Administration ("VA") Hospital in Saginaw, Michigan, from July of 1988 until June 21, 2002, as a nuclear medicine technologist. (Compl., Dkt. 1; Def.'s Mot. for Summ. Judg., Dkt. 42 at 5.) During that time, she was the only nuclear medicine technologist on staff and her job was ranked as a GS10-level position in the federal government pay scale. Plaintiff's employment record was untarnished by any disciplinary actions and she received several awards for outstanding performance. (Dkt. 1, EEOC charge at 3.)

Plaintiff left her employment at the VA Hospital in June 2002 to secure a better-paying job in the private sector, specifically, at the McLaren Medical Center in Flint, Michigan. (Dkt. 42, Ex. A, Pl.'s Dep. at 5-6, 16-17.) Plaintiff declined a retention bonus that Defendant offered to her. (*Id.* at 8.) When Plaintiff left Defendant's employ, the VA Hospital posted an opening internally (for current and former employees of the VA Hospital only) for an upgraded position of Lead Nuclear Medicine Technologist, which was ranked as a GS11-level position. (Dkt. 42 at 6.) The first posting drew no applicants; a second posting resulted in the receipt of applications from Plaintiff

---

[1]The exhibits corresponding to Defendant's original reply brief were not properly authenticated; thus, the Court granted Plaintiff's motion to exclude the exhibits in part (Dkt. 50) and allowed Defendant to file an amended brief with properly-authenticated exhibits (Dkt. 51.)

2

and another female from the Midwest. (*Id.*) Plaintiff states that she believes the position was offered to the other female who declined the position based on the salary. (Dkt. 1, attach. to compl.; Dkt. 42, Ex. A, Pl. Dep. at 13 & Ex. C at 2.)

Plaintiff asserts that Robert Bell applied for the position 13 days after the posting indicated applications would no longer be received and yet was hired. (Dkt. 1, attach. to compl.) The choice of Mr. Bell over Plaintiff for this GS11 position is the basis for Plaintiff's gender discrimination claim. Plaintiff points out that although Robert Bell had 25 years of experience in the field, he had been absent from the field for the two years prior to his application, during which time he worked at various locations such as a local hardware store. (*Id.*) Plaintiff had 26 years of experience in the nuclear medicine field and one year as the Chief Technician and Radiation Safety Officer. Both Plaintiff and Robert Bell have master's degrees in healthcare administration. (*Id.*) Plaintiff is certified by the American Registry of Radiologic Technologists ("ARRT") and the Nuclear Medicine Certification Board ("NMCTB"), whereas Robert Bell is certified by the NMCTB only. (*Id.* at 2.) Plaintiff points out that, at the time of Robert Bell's hiring, all management-level employees who made the relevant hiring decision were males. (*Id.*)

In June 2003, the VA Hospital posted an opening for a GS10-level nuclear medicine technologist. Plaintiff applied for this position along with two male applicants. The Defendant Hospital hired one of the male applicants, but he was soon dismissed for allegedly failing to disclose a past felony conviction. (*See* Dkt. 46, Def.'s Reply at 4; Ex. J at 21-22.) After his termination, Plaintiff states that Louis Thompson, Chief Technologist of Imaging Services, called and encouraged her to re-apply for the position. (Dkt. 1, attach. to compl.) Plaintiff claims that while she was in the human resources department, she was asked to sign a "settlement document and a list of position description duties that included a statement of who was in charge . . . [which]

3

was not an official part of the departmental position description." (*Id.*) Plaintiff refused to sign the document and was not hired. (*Id.*) The position was filled temporarily. (*Id.*) When the position was posted again in 2004, Plaintiff again applied and was hired over three other candidates. (*Id.*) She returned to employment at the VA Hospital at the same grade and title as when she left. (Dkt. 42, Ex. A, Pl. Dep. at 5, 9.)

Defendant points out that Plaintiff was never without employment and that she actually earned more while employed with McLaren Hospital because of call and overtime responsibilities. Plaintiff, however, contends that her damages include the loss of two years of seniority, attorney fees at the EEOC level totaling approximately $6,100, and the difference in wages had she been given the "GS11" position. (*Id.* at 10, 14, 15.)

Defendant denies that gender was a factor in its decision and contends that Plaintiff was not hired for the position of Lead Nuclear Medicine Technologist, the GS11 position, because of

> questions related to her ability to be flexible and adaptable in accommodating patient needs. In addition, Ms. Goddard alienated people – not simply by leaving her earlier employment at the VA, but in the way she left that employment. Her abrasive temperament was also a factor in the agency's decision . . . .

(Dkt. 42, Ex. B, Def.'s Ans. to Interrogs., Interrog. 6 at 3.) In addition, Defendant states:

> Robert Bell was considered the best applicant and was selected for the position of Lead Nuclear Medicine Technologist. Bell's selection was based on a review of his technical and personal skills, which included his ability to be flexible and adaptable. Robert Bell also demonstrated his ability to respond appropriately to changes, to accommodate new situations and to welcome others' ideas. These qualities are considered essential for success in the position and there were concerns that plaintiff lacked those qualities.

(*Id.*, Interrog. 12 at 5.)

Defendant further contends that "the fact that plaintiff abruptly left the same GS-10 position to seek what she hoped would be a supervisory position elsewhere, creating a situation so dire that

4

it led to a congressional inquiry, was of significance in the hiring process." (Dkt. 46 at 3-4; Dkt. 51, Ex. J, Dep. of Louis B. Thompson, Chief Admin. of Imaging, at 5-7, 15; Ex. O, Thompson Decl. at 12.) Finally, Defendants note that they made changes to the department after Plaintiff left, that Mr. Bell worked well with the changes, and that everyone was pleased with him. (Dkt. 51, Ex. J at 5; Dkt. 51, Ex. N, Statement of Dr. Steventon at 6; Dkt. 51, Ex. O, Thompson Declaration ¶ 10.) Dr. Milton Gross, Chief of Nuclear Medicine at the VA Center in Ann Arbor, Michigan, also stated that the working relationship between offices, which frequently interact, was better with Mr. Bell. (Dkt. 51, Ex. K at 2, ¶ 11.) He also added that although Plaintiff preferred administrative work, the positions in Saginaw were primarily for the performance of images. (*Id.* at ¶¶ 9-10; also Ex. L, Declaration of Robert Steventon, Supervisory Medicine Technologist at VA Center in Ann Arbor, ¶¶ 3, 10-11; Dkt. 51, Ex. M, Declaration of Dr. Randall Holden, ¶ 11; Dkt. 51, Ex. O, ¶ 3.) The reading and interpretation of images is done by those employed at the VA Center in Ann Arbor, Michigan. (Dkt. 51, Ex. L ¶ 3-4; Dkt. 51, Ex. M, ¶ 5-6; Dkt. 51, Ex. O, ¶ 4.) Mr. Steventon also stated that "the images prepared by Mary Goddard were generally acceptable, however the frequency with which images had to be reprocessed exceeded the level that would have been expected from a Nuclear Medicine Technologist with her level of experience." (Dkt. 51, Ex. L ¶ 7.) Louis Thompson, Chief Radiology Technologist, stated that he was "aware of the negative and derogatory comments [Plaintiff] made concerning the operation of Nuclear Medicine and the Nuclear Medicine staff" and that her abrupt departure "resulted in scheduling difficulties (studies had to be rescheduled at the last minute) and a Congressional inquiry concerning the cancellations." (Dkt. 51, Ex. O, ¶¶ 11-12.)

Defendant notes that the imaging department has never rehired an employee who had left his or her job. (Dkt. 51, Ex. J at 18.) The EEO Program Manager, Andrew Buniack, adds that

there are one male and one female employee in the Imaging Department at the VA Hospital in Saginaw and that the VA Hospital as a whole is comprised of 408 (75.41%) females and 133 (24.56%) males. (Dkt. 51, Ex. P, Declaration of Andrew Buniack, ¶ 4.) Finally, Mr. Buniack states that during his tenure, "since 2002[,] there have been no gender discrimination cases advanced by employees other than the present claim by [Plaintiff]." (*Id.*, ¶ 6.)

### C. Motion Standards & Governing Law

#### 1. Summary Judgment

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8

F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

2. *Pro Se* **Status**

Plaintiff brings this action *pro se.* A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Haines, supra.* Nevertheless, "a *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21

(1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id*. at 113.

It "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In other words, the court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted). "The district court is not required to make [a *pro se* litigant's] argument for him [because] [s]uch a mandate would 'require the courts to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349 (6th Cir. Mar. 14, 2000) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). *See also Hall, supra*.

### 3. Gender Discrimination

Title VII prohibits employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). Absent direct evidence of discrimination, plaintiffs may rely on the indirect method of proof or burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), *as modified by Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

"In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified

for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). *Accord Hartley v. CSX Trasp., Inc.*, No. 94-4257, 1996 WL 494282 (6th Cir. 1996) (unpublished). I note that this is not the traditional failure-to-hire case since Plaintiff was eventually rehired for her former position but not for the higher position that she desired.[2] Nonetheless, I suggest that the failure-to-hire elements are most appropriate for this case.[3]

If an employee establishes a prima facie case of discrimination, then the burden of production, i.e., to come forward with evidence, shifts to the employer to come forward with a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802. Once the employer asserts legitimate, non-discriminatory reasons for its actions, then the burden shifts back to the employee to show, by a preponderance of the evidence, that the reasons given by the employer were merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804-05; *Burdine*, 450 U.S. at 253. Throughout application of the burden-shifting scheme, the plaintiff continues to bear the burden of proof or persuasion with respect to the ultimate question of whether the defendant intended to discriminate. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

---

[2]I note that if Defendant's actions were couched in terms of adverse employment action rather than a failure to hire, I would suggest that Plaintiff may not be able to show any adverse employment action since her return to the same grade and salary level did not "affect job duties, compensation, or benefits." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). However, despite Plaintiff's complaint of the loss of two years' seniority, that loss was caused by her own decision to leave employment over Defendant's protest and retention offers, not by any act of Defendant.

[3]In addition, if Plaintiff was required to point to a similarly situated person outside the protected class, as argued by Defendant, she would have a difficult burden since she would need to point to a rehired person who voluntarily quit and was not rehired for a position higher than the one abandoned. *See Johnson v. Pernod Ricard USA*, 199 Fed. App'x 785 (7th Cir. 2004) (unpublished) (holding that female plaintiff who was not rehired was not similarly situated to male who was rehired where female had disobeyed an order of defendant employer and stated she quit whereas the male had not disobeyed a direct order and indicated he wanted his job back immediately).

To prove pretext, the employee must show that: (1) the asserted reasons have no basis in fact; (2) the reasons proffered did not in fact motivate the action; or (3) if the reasons were factors in the action taken, they were insufficient on their own to justify the action. *See Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir. 1996). Pretext can only be established where the employee provides evidence from which a reasonable juror could reject the employer's reasons for the action and infer that the employer intentionally discriminated against the employee. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001); *Hicks, supra*, 509 U.S. at 519. The evidence must reveal more than a dispute over the reasons for the action; rather, the evidence must be sufficient to allow a jury to infer "that the employer did not honestly believe the proffered non-discriminatory reason[s]." *Braithwaite*, 258 F.3d at 494 (citations omitted).

**D.     Analysis and Conclusion**

Plaintiff alleges that the failure to hire her in June of 2002 for the GS11 position of Lead Nuclear Medicine Technologist evidences gender discrimination. Plaintiff does not allege any direct proof of discrimination and, thus, must satisfy the elements of the *McDonnell-Douglas* method.

With regard to establishing a prima facie case, it is not disputed that Plaintiff is a member of a protected class (a female); that she applied and was qualified for a position for which the employer was accepting applications; that, despite her qualifications, she was not hired; and that the position was filled by another person outside of her protected class – Robert Bell, a man. Therefore, I suggest that Plaintiff has met the "relatively low bar" of establishing a prima facie case of discrimination. *See Bacon v. Honda of America Mfg., Inc.,* 370 F.3d 565, 572 (6th Cir. 2004) ("the Court has been cognizant of the difficulties inherent in proving discrimination and therefore set a relatively low bar for establishing a prima facie case").

When an employee establishes a prima facie case of discrimination, then the employer must come forward with evidence of a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802. In this case, I suggest that Defendant has met its burden. Defendant has proffered evidence that it had the following non-discriminatory reasons for not hiring Plaintiff for the position of Lead Nuclear Medicine Technologist: (1) Plaintiff's personality, e.g., abrasive temperament, tendency to alienate people, lack of flexibility and adaptability; (2) Plaintiff's past abrupt departure from her employment with Defendant which caused scheduling difficulties and led to a Congressional inquiry; (3) Robert Bell's track record of working well with the staff during his time as a contractual employee; and (4) Plaintiff's expressed preference for administrative work where the position in Saginaw focused on the production of images, not on administrative tasks. (Dkt. 42, Ex. B, Interrog. 6 at 3, 12 at 5; Dkt. 51, Ex. J at 5-7, N at 6, O ¶ 10, K ¶¶ 9-11, L ¶¶ 3, 10-11, M ¶ 11.)

I further suggest that Plaintiff has not come forward with any evidence that the non-discriminatory reasons given by Defendant were merely a pretext for discrimination nor has Plaintiff proffered any evidence that would allow a jury to conclude that Defendant did not believe the non-discriminatory reasons given and instead intentionally discriminated against Plaintiff based on gender. *McDonnell Douglas,* 411 U.S. at 804-05; *Burdine*, 450 U.S. at 253; *Burns*, 91 F.3d at 844; *Braithwaite*, 258 F.3d at 494.

Accordingly, I suggest that summary judgment be granted in favor of Defendant.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

11

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                 s/ *Charles E. Binder*
                                                 CHARLES E. BINDER
Dated: June 15, 2007                       United States Magistrate Judge

### **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker, and on Mary Goddard by first class mail, and served on U.S. District Judge Ludington in the traditional manner.

Date:  June 15, 2007         By     s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder